UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CR-05-239-ELJ |
| ) | |
| vs. ) | MEMORANDUM ORDER |
| ) | |
| TODD BRUNO, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant Todd Bruno's motion to suppress. The Court held a hearing on the motion on April 25, 2006 and requested supplemental briefing from the parties, which has now been filed. The Court has reviewed the evidence and the parties briefing in this matter. The Court, as the finder of fact, is also the finder on issues of credibility and the weight to be given to the testimony offered at the hearing. As such, the Court finds as follows.

### Facts of the Case

On October 28, 2005 at around midnight Officer Josh Gillmore of the Coeur d'Alene Police Department responded to a dispatch report of a private citizen's complaint of a suspicious vehicle located in a restaurant parking lot with someone sleeping inside. The report described the vehicle as a purple 1980's Chevrolet pickup, Idaho license plate number K335946. Officer Gillmore located the truck in the parking lot. Upon approaching the vehicle, Officer Gillmore discovered an individual, later determined to be the Defendant Todd Bruno, in the driver's seat asleep. Officer Gillmore knocked on the window several times before Mr. Bruno responded whereupon the Officer identified himself and asked Mr. Bruno to roll down the window to which Mr. Bruno "clumsily" complied. Officer Gillmore inquired of Mr. Bruno's condition and what he was doing in the parking lot, but he did not immediately respond and appeared confused. During this initial inquiry Mr. Bruno mentioned something about a crossbow. Officer Gillmore then observed Mr. Bruno reach toward his right but the Officer could not see what he was reaching for. Officer Gillmore then requested that Mr. Bruno exit the vehicle at which time he observed a "skinning knife" on the floorboard of the truck.

MEMORANDUM ORDER

1

Upon exiting the truck, Officer Gillmore asked Mr. Bruno to proceed to the rear of the truck and observed that Mr. Bruno kept grabbing his right front pocket. The Officer then asked for Mr. Bruno's identification. Mr. Bruno appeared to be looking for his identification by placing his hands in and out of his pockets and then stated that his wallet was in the truck. Officer Gillmore requested and was given permission to retrieve the wallet from the vehicle. Before retrieving the wallet Officer Gillmore became concerned that he had not searched Mr. Bruno for weapons and turned to look at Mr. Bruno. Officer Gillmore testified that he had his hands in his pockets and he was "staring" at the Officer. Officer Gillmore asked Mr. Bruno take his hands out of his pockets to which Mr. Bruno complied. Officer Gillmore then conducted a pat-down search by placing Mr. Bruno's hands behind his back and patting the exterior of his clothing.

During the search Officer Gillmore located an object in Mr. Bruno's right front pocket and obtained permission to remove the object. Before removing the item the Officer asked what the item was and Mr. Bruno stated it was a gun; the Officer then discovered a .22 caliber handgun encased in a leather holster. Officer Gillmore asked Mr. Bruno for his name and whether he had a concealed weapons permit. Mr. Bruno gave his name and stated he did not have a permit. Officer Gillmore secured the weapon and requested that additional officers be sent to assist him. Officer Gillmore also asked dispatch whether Mr. Bruno had a weapons permit to which dispatch reported he did not. When the second unit arrived, Mr. Bruno was arrested for carrying a concealed weapon without a permit. Officer Gillmore then searched Mr. Bruno and found more ammunition and a pill bottle containing several small pills. Following the arrest, Officer Gillmore and other officers searched Mr. Bruno's vehicle discovering approximately 41.38 grams of methamphetamine, ammunition, and $1,845.00 in cash.

Three days after the arrest, on October 31, 2005, Detective Eric Paull of the Coeur d'Alene Police Department obtained a search warrant for the vehicle and conducted a second search of the truck. During this search Detective Paull discovered a cell phone, vehicle ownership paperwork, ziplock baggies, and ammunition. Mr. Bruno has since been charged with possession of a firearm by a felon, possession of a firearm in furtherance of a drug trafficking crime, and possession of methamphetamine. (Dkt. No. 7).

**Discussion**

Defendant's motion to suppress is based on the following grounds: 1) the stop was unlawful; 2) the pat-down search was illegal; 3) the questioning with out Miranda warnings was unlawful; and 4) the searches of the vehicle were unlawful. The Government argues the stop, frisk, questioning,

MEMORANDUM ORDER
2

and searches were all legal under the Fourth Amendment.

1) <u>Initial Stop</u>:

Defendant argues the officer was without reasonable suspicion to effect a "stop" of the vehicle as there was no traffic infraction or other illegal activity afoot. The Government argues the officer's initial inquiry was merely investigatory and lawfully conducted.

The Court agrees with the Government that Officer Gillmore's initial approach of the vehicle and questioning of Mr. Bruno was proper investigatory questioning in response to a dispatch report. A suspicious individual may be briefly stopped and detained for the purposes of limited inquiry and weapons frisk, or "to maintain the status quo momentarily while obtaining more information." <u>U.S. v. Beck</u>, 598 F.2d 497 (9th Cir. 1979) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968) and <u>United States v. Scheiblauer</u>, 472 F.2d 297, 301 (9th Cir. 1973)). Such a detention requires the officers possess reasonable suspicion that the suspect is engaged in criminal activity. The officers' conduct during the detention must be reasonable under the circumstances. See <u>Adams v. Williams</u>, 407 U.S. 143, 146 (1978) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."). Officers may pose to "the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439-40 (1984).

Officer Gillmore was responding to a private-citizen report of a suspicious vehicle in a parking lot of an establishment that had been closed for an hour when the Officer arrived. In order "[f]or a third-party report of suspected criminal activity to form the basis of an officer's reasonable suspicion, that report must possess sufficient indicia of reliability." <u>United States v. Fernandez-Castillo</u>, 324 F.3d 1114, 1117 (9th Cir. 2003). Such reports may posses indicia of reliability where they describe the subject in some detail and the currency of the information. <u>Id.</u> ("reports made contemporaneously with a complainant's observations are generally more reliable than those reports made later in time."). The report in this case provided a description of the truck, 1980's model purple Chevy truck, the license plate number, and its location. In addition, the caller stated there was someone asleep inside the truck. Officer Gillmore easily identified the vehicle based on the report's description. In responding to the report, the Officer has an obligation to conduct an investigation sufficient to address the concerns for which the report was made. While no specific crime may have been apparent, the Officer could not simply disregard the report. See <u>Adams</u>, 407 U.S. at 145 ("The Fourth Amendment does not require a policeman who lacks the precise level of

MEMORANDUM ORDER
3

information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.").

When approaching the car initially, Officer Gillmore observed the parking lights were on and the occupant was hunched over and sleeping on top of a dog.[1] After awaking the occupant by knocking on the window a couple of times and asking him to roll down the window, Officer Gillmore asked routine questions of an investigatory nature concerning Mr. Bruno's identity and his condition. Mr. Bruno's responses generally complied with the questions but were somewhat confusing and clumsy.[2] In addition, Mr. Bruno made mention of a crossbow and reached towards the floor of the truck. Whereupon, Officer Gillmore requested that Mr. Bruno exit the vehicle due to his confused manners and the Officer's concern regarding possible weapons in the vehicle. These concerns by the Officer were sufficient to give rise, at the very least, to a concern for the Officer's safety with Mr. Bruno in the vehicle. See Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977) (concluding that without any showing that a particular suspect may be armed an officer may require a person lawfully stopped in that case to alight from his car in order to diminish "the possibility, otherwise substantial, that the driver can make unobserved movements." The minimal intrusion in asking them to step outside their vehicle is justified in the interest of officer safety.). The Court finds the initial questioning and request for Mr. Bruno to exit the vehicle were warranted and lawful. This entire encounter was in investigatory detention permissible under Terry v. Ohio whereby Officer Gillmore made a brief inquiry regarding Mr. Bruno's identity and condition. The questions properly adhered to the concerns voiced in the report provided to dispatch.

2)      Pat-Down Search:

Defendant argues the pat-down search was illegal and, therefore, the subsequent searches of the truck were also illegal. Mere nervousness does not justify reasonable suspicion, Defendant argues, nor does his action in placing his hand in his pocket, particularly since it was cold and Mr. Bruno had complied with the Officer's request to remove his hands. The Government contends the circumstances warranted a weapons search in light of Officer Gillmore's reasonable concern for safety and the possibility of weapons.

---

[1] On cross-examination defense counsel highlighted the fact that the Officer chose to not turn on his video camera upon arriving at the scene. While a video may have no doubt provided an actual account of the events, the Court finds Officer Gillmore's testimony to be credible and accurately reflect the events of the evening.

[2] The Court has considered the fact that Mr. Bruno had just been awaken at this point but still concludes that the Officer's concerns due to Mr. Bruno's statement regarding the crossbow justified Officer Gillmore asking him to exit the vehicle.

MEMORANDUM ORDER

4

A police officer "is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64 (1968). The test for whether a weapons search was reasonable is an objective one, the officer need not demonstrate that he or she was in actual fear. United States v. Baker, 47 F.3d 691 (5th Cir. 1995). Probable cause is not required for a pat-down of a suspect for weapons if it is independently justified by reasonable suspicion that the suspect may be armed. United States v. Flippin, 924 F.2d 163, 166 (9th Cir. 1991).

Reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Thompson, 282 F.3d 673 (9th Cir. 2002) (citing United States v. Rojas-Millan, 234 F.3d 464, 468-69 (9th Cir. 2000)). An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation." United States v. Mariscal, 285 F.3d 1127 (9th Cir. 2002) (citing United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000) and United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir. 2000)).

"The justification for a Terry 'frisk' [is] primarily [for] the officer's self-protection, and that all searches must be 'reasonably related in scope to the justification for their initiation.'" United States v. Davis, 482 F.2d 893, 906-07 (9th Cir. 1973) (quoting Terry v. Ohio, 392 U.S. at 29). "Consequently...the permissible scope of a Terry "frisk" is limited to a patting down of the "stopped" person's outer clothing, for no more is required to detect the presence of weapons that might be available for immediate use against the officer." Id. "The sole justification of the search . . . [under Terry] is the protection of the police officer and others nearby...." Id. at n. 36 (noting that the Terry search is a "self-protective search for weapons." citing Sibron, 392 U.S. at 64). "[The frisk] must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. . . ." Id. at n. 37 (citing Terry v. Ohio, *supra*). The officer is entitled only "to conduct a carefully limited search of the outer clothing of . . . [legitimately "stopped" persons] in an attempt to discover weapons which might be used to assault him." Id. Once an officer has "reasonably concluded that the person whom he had legitimately stopped might be armed and presently dangerous" the officer may conduct a limited search for weapons.

MEMORANDUM ORDER

Pennsylvania v. Mimms, 434 U.S. at 111-12. The standard for a frisk stated in Terry asks "whether the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action was appropriate." Id. (citations and quotations omitted).

Officer Gillmore's concerns were heightened after Mr. Bruno mentioned a crossbow and reached toward the floor of the vehicle; prompting Officer Gillmore to ask Mr. Bruno to exit the truck. Upon exiting the vehicle, Officer Gillmore observed the knife in the truck, Mr. Bruno appeared nervous, and was holding his right front pant pocket. Officer Gillmore testified that Mr. Bruno repeatedly placed his hands on, near, or in his pockets but that he complied with the Officer's request to remove his hands. Having mentioned a crossbow and seeing the knife in the truck coupled with the fact that Officer Gillmore was alone, late at night, and in a parking lot of a closed establishment, gives rise to a reasonable suspicion that Mr. Bruno may be armed and presently dangerous such that the frisk for weapons was proper.[3]

After feeling the rectangle object in Mr. Bruno's pocket, Officer Gillmore asked Mr. Bruno if he could remove the object to which Mr. Bruno consented. Before retrieving the item, Officer Gillmore asked what the object was and Mr. Bruno responded that was a gun. This exchange was appropriate within the bounds of a weapons search. Upon locating an object in a pocket the Officer had previously observed Mr. Bruno holding, it was reasonable for the Officer to inquire about the object. Moreover, before he removed the object it is prudent to ask what the object is for obvious safety reasons. The Court finds the Officer properly conducted the weapons search and there is no evidence that the search was anything but consensual given Mr. Bruno's responses.

---

[3] Defendant points to United States v. Thomas, 863 F.2d 622 (9th Cir. 1988) where the Ninth Circuit determined that the officer's frisk of an individual was not based on reasonable suspicion. The Court has reviewed this case and finds it to be factually distinct from the events present here. In Thomas there was no basis for the officer to suspect weapons whereas in this case Officer Gillmore asked Mr. Bruno to exit the vehicle after he mentioned a crossbow and reached to his right, observed a knife in the truck, and Mr. Bruno repeatedly placed his hands on or in his pockets. These facts together with the time of night, the fact that the Officer was alone, and the isolated area warranted the frisk and distinguish these facts from those found insufficient in Thomas.

MEMORANDUM ORDER

3)      Questioning Pre-Miranda Warning:

After removing the gun, Officer Gillmore inquired of Mr. Bruno whether he had a permit to carry a concealed weapon. The question was asked while Mr. Bruno was being frisked and without any Miranda warnings being administered. The Government argues the question was an appropriate inquiry to avoid a false arrest as it is legal to carry a weapon in Idaho with a permit. The Defendant argues the question violates the Fifth Amendment because it asks for a potentially incriminating response. Further, Defendant argues the question was not made upon a reasonable belief of any criminal activity.

This argument turns on whether Miranda was implicated such that the Officer should have read Mr. Bruno his Miranda rights prior to asking about the concealed weapons permit. For Miranda to apply, a suspected individual must be in police custody such that, given the totality of the circumstances, a reasonable person would not feel they are free to leave. In other words, whether Mr. Bruno was "seized" under the Fourth Amendment.

> Stops under the Fourth Amendment fall into three categories. First, police may stop a citizen for questioning at any time, so long as that citizen recognizes that he or she is free to leave. Florida v. Bostik, 501 U.S. 429 (1991). Such brief, "consensual" exchanges need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures. Second, the police may "seize" citizens for brief, investigatory stops. This class of stops is not consensual, and such stops must be supported by "reasonable suspicion." See, e.g., Terry v. Ohio, 392 U.S. 1, 20-22 (1968); United States v. Holzman, 871 F.2d 1496, 1502 (9th Cir. 1989). Finally, police stops may be full-scale arrests. These stops, of course, are seizures, and must be supported by probable cause. Adams v. Williams, 407 U.S. 143, 148-49 (1972).

Morgan v. Woessner, 997 F.2d 1244, 1253 (9th Cir. 1993). As to whether a stop is a "seizure" or merely a consensual exchange, the Supreme Court stated that "[A] person is 'seized' only when by means of physical force or a show of authority, his freedom of movement is restrained.... As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Id. (quoting United States v. Mendenhall, 446 U.S. 544, 553-54 (1980)). An investigatory detention or mere questioning is not *per se* custodial interrogation triggering the protections afforded by Miranda. See Florida v. Bostick, 501 U.S. 429 (1991); United States v. Woods, 720 F.2d 1022 (9th Cir. 1983). A Terry stop may involve "a brief stop, interrogation, and, under proper circumstances, a brief check for weapons." United States v. Robertson, 833 F.2d 777, 780 (9th Cir. 1987) (mere presence at the scene is insufficient

MEMORANDUM ORDER

to provide probable cause for an arrest); see also Adams, *supra* (weapons frisk on basis of reasonable suspicion held to be Terry stop); Pennsylvania v. Mimms, *supra* (order to get out of car after lawful stop for traffic violation and frisk for weapons after bulge observed in jacket constituted Terry stop).

As determined above, the questioning and frisk for weapons by the Officer was reasonable and the encounter was an investigative detention not implicating Miranda. The inquiry regarding the permit was an effort to clarify the situation. Because the question regarding the concealed weapons permit was asked during a Terry stop, not an arrest, Officer Gillmore was not required to give Mr. Bruno Miranda warnings. The fact that the question occurred while Officer Gillmore was conducting the frisk does not convert the exchange into an arrest or custody for purposes of Miranda; particularly in light of the fact that the entire exchange took only three or four minutes.

4)   Vehicle Search:

Mr. Bruno was ultimately arrested and his vehicle searched by Officer Gillmore at the scene and later by Detective Paull after having obtained a search warrant. Defendant argues these searches were unlawful as fruit of the poisonous tree of the previous illegal stop and search conducted by Officer Gillmore. An officer who has made a lawful arrest may search the passenger compartment of the vehicle and "may also examine the contents of any containers found within the passenger compartment." New York v. Belton, 453 U.S. 454 (1981). Because the stop and arrest of Mr. Bruno here were lawful, the subsequent search of the vehicle incident to arrest was also lawful.

**ORDER**

Based on the foregoing and being fully advised in the premises, the Court **DENIES** Defendant's motion to suppress (Dkt. No. 23). Accordingly, the trial in this matter is now set for **Tuesday, May 23, 2006 at 9:30 a.m. in Coeur d'Alene, Idaho**.



DATED:  **May 11, 2006**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER

8